**Enrique FIGUEROA–RODRIGUEZ, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 87–1987.**

United States Court of Appeals, First Circuit.

Submitted April 8, 1988.

Decided May 6, 1988.

drug should not be given to persons with a "demonstrated hypersensitivity to any of its components."

William Dominguez Torres, Rio Piedras, P.R., Juan A. Hernandez Rivera, Hato Rey, P.R., and Ivan O. Gonzalez Cruz on brief, for plaintiff, appellant.

Russell A. Shultis, Office of the Gen. Counsel, Social Security Div., Dept. of Health and Human Services, Rockville, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Security, and Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation, Baltimore, Md., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

Claimant was born in 1933. He has a fourth grade education. He does not speak English. He worked as a welder for many years, but in September 1981, when he was 48, he fell and hurt his back. He claims he has been disabled since then due to back problems and a mental condition. He meets the insured status requirement through September 30, 1985.

The Appeals Council concluded that claimant's mental condition was not severe and hence did not significantly limit the work claimant could do, but that his back condition restricted him to light work. The Council further concluded that claimant could not return to his prior welding work, which was at least medium exertional level work. Consequently, the Council proceeded to step 5 of the sequential evaluation process, *see Goodermote v. Secretary*, 690 F.2d 5, 7 (1st Cir.1982), and relied on the grid to discharge the Secretary's burden of showing the existence of other work claimant could perform. The Council applied grid rules 202.18 (younger—under 50—individual, limited or less education, no transferable skills, RFC for light work) and 202.-11 (age 50-54, limited or less education, no transferable skills, RFC for light work) which directed a finding of not disabled.

We address the salient points.

Both of the grid rules applied assumed an ability to speak English. This is clear from the grid itself, which has separate rules for persons who are "illiterate *or* unable to communicate in English." (Emphasis added.) Claimant speaks only Spanish. The rule applicable to a 50 to 54 year old person (claimant turned 50 on September 17, 1983, which was prior to the expiration of insured status) unable to communicate in English with no transferable work skills and an RFC for light work is rule 202.09. This rule directs a finding of disabled.

We recognize that there may be reasons not to apply Rule 202.09 to claimant, for claimant lives in Puerto Rico where the dominant language is Spanish. We do not foreclose the possibility that a vocational expert could identify jobs that a 50 to 54 year old, fourth grade educated, Spanish speaking person physically limited to light work with no transferable skills could perform. But, at step 5 of the sequential evaluation process, for the grid to direct a finding of not disabled, a claimant's situation must coincide with the grid rule criteria. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b) ("[W]hen all factors coincide with the criteria of a rule, the existence of ... jobs [in the national economy] is established. However, the existence of such jobs for individuals whose

remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered....")

It is true that in *Arce Crespo v. Secretary*, 831 F.2d 1 (1st Cir.1987), we took judicial notice "that for the most part it is the ability to communicate in Spanish, not in English, that is vocationally important in Puerto Rico." In that case, however, a vocational expert had testified to the existence of jobs in the Puerto Rico economy that claimant could perform. The Secretary had credited that testimony and found claimant could perform the enumerated jobs. On that basis alone, the Secretary's decision denying benefits was sustainable. The Secretary had also, somewhat as an alternative basis for decision, invoked a grid rule as a "framework" for consideration. The grid rule had assumed an ability to communicate in English and had directed a finding of not disabled. Had the rule applicable to someone unable to speak English been applied, a finding of disabled would have been directed. We said that "[i]n using the grid as a framework for consideration of the vocational testimony ... the ALJ was justified in treating claimant's fluency in Spanish as tantamount to fluency in English." We expressly declined, however, to determine whether, had there *not* been vocational testimony and had the Secretary relied on the grid alone for a dispositive finding of no disability, the Secretary could simply have substituted Spanish for English because claimant resided in Puerto Rico.

In the present case, the Appeals Council paid lip service to the grid being used as a "framework." In reality, however, since there was no vocational evidence, the Appeals Council relied exclusively on the grid to show the existence of jobs claimant could perform.

The grid rules are based on the existence of jobs in the *national* economy. 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(b). To what extent the Puerto Rican economy mirrors the national economy is not, we tend to think, a matter of common knowledge such that Spanish can be simply substituted for English and the grid applied on the assumption that if jobs exist in significant numbers in the national economy for one fluent in English, they must similarly exist in significant numbers in Puerto Rico and elsewhere in the nation for a person of similar age, education, and vocational background fluent in Spanish. We need not now, however, dispositively determine this matter since, for the reason which follows, the decision was questionable on another ground. If in the future, however, the Secretary relies on a grid rule which assumes fluency in English when the claimant speaks only Spanish, the Secretary should address the concerns we have expressed.

The Appeals Council in substance found that claimant had a mental impairment—dysthymic disorder—but that it was not a severe impairment. This finding is not supported.

The procedure for evaluating mental impairments is set forth in 20 C.F.R. § 404.1520a. The regulation directs the Secretary to rate the degree of functional loss in four areas, areas which, the Secretary says, are "essential to work": 1) restriction of activities of daily living; 2) difficulties in maintaining social functioning; 3) deficiencies of concentration, persistence or pace; and 4) episodes of deterioration or decompensation in work or work-like settings. The regulation explains when, based on these ratings, a mental impairment may be considered not severe:

"(1) If the four areas considered by us as essential to work have been rated to indicate a degree of limitation as "none" or "slight" in the first and second areas, "never" or "seldom" in the third area, and "never" in the fourth area, we can generally conclude that the impairment is not severe, unless the evidence otherwise indicates there is significant limitation of your mental ability to do basic work activities (see § 404.1521)."

20 C.F.R. § 404.1520a(c)(1).

The Appeals Council's ratings in these four areas were slight, slight, never, and never, ratings which render the impairment not severe. These ratings, however, conflicted with those the medical advisor (MA)

had recommended, which were moderate, slight to moderate, seldom, and insufficient evidence.[1]

The medical advisor explained, with relationship to various medical reports as well as his own observation of claimant, the basis for the checkmarks he made. In particular, he said that based on the report of Dr. Guillen, the Secretary's examining psychiatrist, restriction on daily activities should be graded moderate. Such a rating, under § 404.1520a(c)(1), would appear to take the mental impairment out of the non-severe category. In that event, claimant would have a significant nonexertional impairment which would preclude a straight application of the grid.

It is true that the account of claimant's daily activities came from claimant or his wife, persons who might have an incentive to exaggerate claimant's isolationist tendencies. Their accounts, however, stand uncontradicted. The Secretary did not, for example, as the Secretary has sometimes done in the past, interview neighbors to determine whether activities are as restricted as claimed.

In any event, there is a further difficulty. The Council checked "never" with respect to "episodes of deterioration or decompensation in work or work-like settings," whereas the MA indicated there was insufficient evidence to rate claimant's ability to tolerate work-like settings. As the MA explained, there was no evidence claimant exposed himself to a work situation. And neither the MA or the consulting psychiatrist were asked or gave an opinion on whether claimant likely could be expected

1. We reproduce the relevant portion of the ratings as completed by the ALJ based on the MA's testimony.

| FUNCTIONAL LIMITATION | DEGREE OF LIMITATION | | | | | |
|---|---|---|---|---|---|---|
| 1. Restriction of Activities of Daily Living | None ☐ | Slight ☐ | Moderate ☒ | Marked* ☐ | Extreme ☐ | Insufficient Evidence ☐ |
| 2. Difficulties in Maintaining Social Functioning | None ☐ | Slight ☒ | Moderate ☐ | Marked* ☐ | Extreme ☐ | Insufficient Evidence ☐ |
| 3. Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner (in work settings or elsewhere) | Never ☐ | Seldom ☒ | Often ☐ | Frequent* ☐ | Constant ☐ | Insufficient Evidence ☐ |
| 4. Episodes of Deterioration or Decompensation in Work or Work–Like Settings Which Cause the Individual to Withdraw from that Situation or to Experience Exacerbation of Signs and Symptoms (which may Include Deterioration of Adaptive Behaviors) | Never ☐ | Once or Twice ☐ | Repeated* (three or more) ☐ | Continual ☐ | | Insufficient Evidence ☒ |

not to suffer episodes of deterioration in a work setting.

We do not understand—and the Secretary as offered no explanation—how this category is supposed to be applied to a claimant, who, like most claimants, has not worked during the period for which he seeks disability benefits. Nor, does it appear, that claimant has been in a "work-like" setting in that period. The Appeals Council's "never" rating may be literally true. But we do not think such literalness can be used as an affirmative basis to conclude the mental impairment is a truly *de minimis*, nonsevere condition. *See McDonald v. Secretary*, 795 F.2d 1118, 1124–1125 (1st Cir.1986) (nonsevere label limited to slight abnormalities which have no more than a minimal effect on ability to work).

A further matter needs explanation. On the one hand, in the body of his opinion, the administrative law judge (ALJ) acknowledged the standard set forth in § 404.1520a(c)(1) for determining when a mental impairment is not severe. On the other hand, he adopted the MA's ratings— ratings which appear to take an impairment out of the § 404.1520a(c)(1) category of nonsevere impairments—but at the same time asserted that the mental impairment was not severe. If it is the Secretary's position that § 404.1520a(c)(1) does not set the upper limits of a nonsevere impairment —in other words, that despite ratings higher than slight, slight, seldom, never, a mental impairment may still be considered not severe—we think the Secretary should expressly so explain. But that has not been done in the present case. Instead, the ALJ asserted—incorrectly we think—that the MA had testified that claimant's impairment was not severe. (Had the MA so testified, we would be left with the same inconsistency, that is, the MA's moderate and insufficient evidence ratings would exceed § 404.1520a(c)(1)'s nonsevere categorization.) As we read the transcript, the MA's testimony was limited to whether claimant met any of the listings. The MA concluded claimant did not meet the listings. The MA did not say whether the mental impairment would have no significant impact on ability to do basic work activities and hence was not severe.

The Appeals Council, in turn, provided no explanation. It simply filled out a form checking slight, slight, never, never, so that the ratings would correspond with § 404.1520a(c)(1).

We do not say that the Secretary is inevitably bound by a MA's assessment. But here the MA's assessment stands uncontradicted—since the Secretary's examining psychiatrist did not submit an assessment of his own—and neither the ALJ nor the Appeals Council adequately explained their reasons for rejecting the MA's assessment.

In view of the foregoing, the judgment of the district court is vacated with directions to remand to the Secretary for further proceedings.