**Jimmy R. LANKFORD, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 90–6514.

United States Court of Appeals, Sixth Circuit.

Argued May 20, 1991.

Decided June 21, 1991.

Donna M. Lefebvre (argued and on brief), Rural Legal Services of Tennessee, Oak Ridge, Tenn., for plaintiff-appellant.

Bruce Granger, Mack A. Davis, Mary Ann Sloan, Laurie G. Remter (on brief), Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, Ga., and John W. Gill, Jr., U.S. Atty., and Loretta Simonetti Harber, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Knoxville, Tenn., for defendant-appellee.

Before JONES and NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.

PER CURIAM.

Plaintiff Jimmy R. Lankford appeals the district court's grant of summary judgment affirming the Secretary's denial of Social Security disability benefits. For the reasons that follow, we reverse.

## I.

Lankford filed his application for benefits on April 10, 1985 alleging disability from December 31, 1974 due primarily to mental health problems. An administrative law judge ("ALJ") denied Lankford's application after a hearing on August 16, 1986. The Appeals Council remanded the case for further medical development pursuant to *Samuels v. Heckler*, 668 F.Supp. 656 (W.D.Tenn.1986) (creating the proper procedure for evaluating mental health claims). On February 14, 1989, an ALJ again denied Lankford benefits. The Appeals Council denied Lankford's request for review on August 11, 1989.

On September 7, 1989, Lankford filed this action in federal court seeking review of the final decision of the Secretary pursuant to 42 U.S.C. § 405(g) (1989). Magistrate Robert P. Murrian issued a report and recommendation on March 30, 1990, recommending that the decision of the Secretary be reversed and that benefits be provided without further remand. No objections were filed to the magistrate's report. However, on September 27, 1990, the district court rejected the magistrate's recommendation and entered a judgment affirming the decision of the Secretary.

The facts and medical history underlying Lankford's claims of disability are essentially not in dispute. Lankford was last eligible for disability insurance on June 30, 1979. He was thirty-four years old at the time his insured status expired. The ALJ found that there was no evidence to suggest that Lankford had been engaged in substantial gainful employment since the alleged onset date. His past relevant work includes work as a dairy worker in 1969–70. He also worked as a maintenance man mopping and cleaning floors, mowing the grounds and doing some electrical work. The ALJ also found that Lankford had had an unsuccessful work attempt in 1978 when he tried to work as a nurse's aide but could not perform the work. He also worked briefly as a mobile home mechanic.

A. *Evidence prior to June 30, 1979*

While Lankford complains of mental ailments since 1964, he began receiving treatment fairly regularly through the Veteran's Administration ("VA") in 1974.[1] On

---

1. Lankford served in the Army from April 1964 until May 1967. He received a general dis-

March 28, 1974, Dr. Charles M. Robinson, clinical psychologist at the VA Hospital in Atlanta, Georgia ("VAHG"), performed an intake interview with Lankford and reported one of his chief symptoms was difficulty controlling his temper. Dr. Robinson noted that Lankford acknowledged problems dealing with others during his military service, especially with those of higher rank; that his wife recently had him arrested for aggravated assault; and that he had been arrested previously for assault during a family brawl. Dr. Robinson noted that Lankford was not forthcoming with information during the interview and that he revealed "much socially maladaptive behavior." J. App. at 158. Dr. Robinson diagnosed "an Anxiety Reaction in an individual with a passive-aggressive personality structure." *Id.*

Ms. Prentice Reynolds, the psychiatric social worker assigned to Lankford's case at the VAHG, reported in her February 6, 1975 progress notes that Lankford had been fired from his job at a dialysis clinic. She observed: "He has lost several jobs in the past few years and it appears to be due to [patient's] inability to get along with others." *Id.* at 162.

On March 20, 1975, after psychological testing, Lankford was diagnosed as having passive-aggressive personality disorder, depressive reaction, chronic alcoholism and suspected incipient organic brain syndrome. *Id.* at 154. This report, prepared by Dr. Shirley S. LaRoche, staff psychologist at the VA Hospital in Murfreesboro, Tennessee ("VAHT"), also indicated that Lankford's psychological profile showed an individual with a passive-aggressive personality, "schizoid features manifested by a degree of paranoid ideation, sexual conflict and maladjustment, withdrawal and regression, [and] a degree of mood fluctuation is prevalent from depression to periods of euphoria." *Id.* Dr. LaRoche also noted that Lankford experienced "blackout" spells and that he admitted to thirteen years of alcohol abuse. She also noted suicidal ideation. *Id.*

On March 29, 1975, Lankford was readmitted to VAHT after having been discharged two days earlier. He was discharged twenty-one days later with a diagnosis of passive-aggressive personality disorder and alcoholism. In September 1975 he was again admitted to the hospital after having taken an overdose of valium. He apparently had quarrelled with his wife and was having extreme anxiety because of separation from her. He also complained of insomnia, anorexia, crying spells and marital problems. The ALJ found that with treatment, Lankford adjusted to the idea of a divorce from his wife. *Id.* at 17.

On June 15, 1976, Lankford again sought admission to VAHT claiming that he had overdosed on his medication. The nurse noted a suspicion that this might have been a manipulative gesture to get into the hospital. Later, Lankford admitted that he found admission to the hospital helpful as a way to "get his life back together." The doctor noted that Lankford seemed to be experiencing stress from his extended family.

On June 16, 1976, Lankford was admitted to VAHT for alcohol abuse and passive-aggressive personality disorder. He was treated there for 14 days.

The next incident occurred on May 27, 1977, when Lankford was admitted to the VA Hospital in Gainesville, Florida ("VAHF") for forty-seven days after he lost control and " 'slapp[ed] his wife' during an anxiety attack." *Id.* at 172. Dr. Director, his treating physician, at first thought that Lankford's symptoms, including anxiety, behavior problems and a persistent tremor in his hand were due to alcohol abuse. However, after more extensive examination of Lankford and his history, the doctor determined that the hand tremor was genetic, finding such a tremor in both Lankford's father and brother, who do not abuse alcohol. During this period Lankford reportedly stated that alcohol was the only drug, prescribed or otherwise,

charge under honorable conditions. Since that time, he has had a service-connected disability

due to anxiety.

which gave him relief for his anxiety and his hand tremor. Indiral was prescribed for the tremor with good results. Antidepressants and tranquilizers were also prescribed and seemed to help.

Lankford spent another week at the VAHF in September 1977 for depression and insomnia. He was released on September 22, 1977, and the physicians noted that he was "considered stable regarding his affect and mood." *Id.* at 174. Two days later, after returning home, he was involved in a physical altercation with his neighbor and ended up in jail. The police transferred him to the VAHF on September 24, where he was admitted to avoid harm to himself and others in light of the fact that "[a]t the time of admission, the patient was judged to have homicidal ideation." *Id.*

On May 16, 1978, Lankford was again hospitalized in a VA Hospital in Tennessee after having been injured the night before in a car accident. The psychology department staff experts did an analysis and "it was their impression that the veteran had a past history of episodes of violence, impulsive behavior, physical complaints for which no medical basis was found, domestic strife, excessive drinking, etc." *Id.* at 177. Further, the staff noted that they thought that Lankford would not benefit from psychiatric treatment at the hospital. *Id.* In addition, an incident occurred at the hospital which is worth noting. On May 23, Lankford asked that a social worker call his wife to see if she could visit him. The social worker, unable to reach Lankford's wife, left a message. Upon hearing that the social worker had not succeeded in contacting his wife directly, he flew into a rage, was verbally abusive to the social worker, threatened suicide and left the ward in the rain saying he was going to kill himself. Four hours later he returned for his belongings and was given an irregular discharge. *Id.*

On May 26, 1978, Lankford was readmitted to VAHT for a twenty-one-day stay with a similar diagnosis of passive-aggressive personality disorder with symptomatic depression, and alcohol addiction. On June 22, 1978, he was admitted for thirty-six-day stay and was treated for chronic anxiety, hookworm infestation and persistent right knee pain.

On August 22, 1978, Lankford underwent a psychological evaluation by Dr. Norman L. Stephenson, staff psychologist at the VAHT. According to his reports, Lankford was "unresponsive in general to the Rorschach and TAT stimulit [sic] with intermittent periods marked by hostile voice tone and facial expression, towards the examiner." *Id.* at 180. Dr. Stephenson opined that:

> [U]nder stressful conditions, passive aggressive features may emerge through hostility projected onto others in his environment, or directed inward through alcohol abuse or suicide attempts. This style of relating may keep him socially withdrawn and unwilling to relate to others. Possible areas of difficulty may include: alcohol abuse, failure to establish significant relationships with others, and excessive anxiety which may be debilitating.

*Id.* at 181.

B. *Medical Evidence after June 30, 1979*

The evidence after the relevant period suggests continued passive aggressivity, depression, anxiety and persistent hand tremor. As with the relevant time period, there were repeated hospital stays primarily involving mental ailments. In October 1983, Lankford was hospitalized after he threatened two persons with a rifle. He also had taken an overdose of drugs. Testing during this period revealed "significant elevations on scale 8 schizophrenia and scale 1 hypochodriasis." *Id.* at 192. His psychological profile suggested he was rebellious, antisocial and nonconforming, lacking in tolerance and apt to "maintain social distance and feel socially inadequate." *Id.*

In April 1985, Lankford was again hospitalized and was discharged after seventy-nine days with a diagnosis of schizophrenia, paranoid type, neurosis, and alcohol abuse. *Id.* at 212. During the course of 1986 to 1988, Lankford was hospitalized a

number of times for suicide attempts or erratic behavior. In July 1988, he was admitted to VAHM after shooting the telephone off the wall and threatening suicide. He was evidently drunk and was taking Darvon.

Dr. Robert Wyrick found that Lankford was "withdrawn" from community living and that his degree of adaptive functioning was "very poor." *Id.* at 225, 227. Dr. Wyrick assessed Lankford's prognosis as "poor." *Id.* at 227.

Alice Garland, a psychological examiner working under the supervision of Dr. Leonard Miller, in connection with a Medicaid application in 1988, concluded that Lankford had an inability to get along with others and that he used his aggressiveness in dealing with others to get his own way. She also noted that he would have a difficult time working with others and taking orders from a supervisor. *Id.* at 303. She filled out a "medical Assessment of Ability to Do Work–Related Activities (Mental)" on September 8, 1988 and reported that Lankford's ability to relate to co-workers, deal with the public, interact with supervisors, behave in an emotionally stable manner, and relate predictably in social situations was only "fair." [2] *Id.* at 337, 339. Ms. Garland concluded that: "Due to Mr. Lankford's poor emotional controls, he does not tolerate stress well, and he would have a difficult time in adapting to a work environment." *Id.* at 338.

## II.

The court's review of the Secretary's decision is limited to inquiring whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. § 405(g) (1989); *McCormick v. Secretary of Health and Human Services*, 861 F.2d 998, 1001 (6th Cir.1988). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). Even if we, as the reviewing court, were to resolve the factual issues differently, the Secretary's decision must

stand if there is substantial evidence to support it. *Smith v. Secretary of Health and Human Services*, 893 F.2d 106, 108 (6th Cir.1989).

As the material facts in this case are not in dispute, the issues for appeal center on the application of the law to the facts. Lankford raises two alleged errors in the Secretary's decision. First, Lankford claims that the Secretary erroneously determined that Lankford could perform his past relevant work, without properly applying the sequential evaluation for disability required by the Secretary's regulations. *See* 20 C.F.R. § 404.1520; *Mowery v. Heckler*, 771 F.2d 966, 969–70 (6th Cir.1985). Specifically, Lankford asserts that the Secretary should have found that Lankford's severe impairments were equal to a listed impairment and stopped, rather than proceeding to consider whether Lankford could perform his past relevant work. *See, id.* (citing 20 C.F.R. § 404.1520a ("If at any time in the review the Secretary makes a decision that the plaintiff is or is not disabled, review of the claim ceases.")). Lankford's second assertion is that even if the Secretary properly reached the step in the analysis regarding past relevant work, the Secretary's finding that Lankford could do such work is not supported by substantial evidence.

 The Secretary is required to evaluate an individual's eligibility for disability benefits according to a step-by-step sequential formula which proceeds as follows:

(1) Is the claimant working? If not,

(2) Does the claimant have a severe impairment? If so,

(3) Is the claimant's impairment(s) listed in or equivalent to an impairment listed in appendix one to 20 C.F.R. part 404, subpart P? If not,

(4) Does the impairment prevent the claimant from doing past relevant work? If so,

(5) Does the claimant's impairment prevent him from doing any other work?

---

**2.** According to the medical assessment form, an assessment of " 'fair' means that an individual's ability to function in this area is seriously limited, but not precluded". J.App. at 337.

*See* 20 C.F.R. § 404.1520. Lankford claims that the Secretary erred in not finding that his impairments were equal to a listed impairment under the regulations.

> The regulations provide that when a claimant can show an impairment that meets the duration requirement (12 months) and is listed in Appendix 1 (the "listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled, and should not go on to consider the claimant's age education or work experience.

*Gambill v. Bowen,* 823 F.2d 1009, 1011 (6th Cir.1987). Further, in determining whether a claimant's impairments are equivalent to listed impairments, the court must consider the combined effect of those impairments. 42 U.S.C. § 423(d)(2)(B). The statute specifically states:

> (B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B). Lankford asserts that in deciding that his impairments were not of sufficient severity to be equal to a listed impairment, the Secretary did not consider the impairments together as required by law.

 Finally, due to the special nature of mental impairments, the Secretary is required to follow a special procedure. Specifically, the Secretary is required to rate the degree of functional loss imposed by a mental impairment based upon the evidence and conclusions supported by it. 20 C.F.R. § 404.1520a. In performing this analysis, the Secretary must,

> in each case, incorporate the pertinent findings and conclusions based on this procedure in [its] decision rationale. [The Secretary's] rationale must show the significant history, including examination, laboratory findings, and functional limitations that [he] considered in reaching conclusions about the severity of the mental impairment(s).

20 C.F.R. § 404.1520a(C)(4). Lankford asserts that the Secretary did not properly apply these legal standards in determining that Lankford's impairments were not equivalent to listed impairments.

In order to establish a disability based upon a personality disorder under Listing Section 12.08, Lankford must show that he meets the medical criteria, called "A" criteria, and that he has the required degree of functional limitation based upon his impairments, so-called "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, appendix 1, 12.00.

The purpose of the "A" criteria is "to medically substantiate the presence of a mental disorder." *Id.* The "A" criteria in Listing 12.08 are:

> A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
>
> 1. Seclusiveness or autistic thinking; or
>
> 2. Pathologically inappropriate suspiciousness or hostility; or
>
> 3. Oddities of thought, perception, speech and behavior; or
>
> 4. Persistent disturbances of mood or affect; or
>
> 5. Pathological dependence, passivity, or aggressivity; or
>
> 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior.

*Id.* The Secretary found that Lankford suffers from "pathologically inappropriate hostility, pathological dependence, passivity or aggressivity," and "intense unstable interpersonal relationships." J. App. at 27. The Secretary further determined that Lankford suffers from a substance addiction disorder (Listing Section 12.09) i.e. alcoholism, *id.* at 28, severe chronic anxiety, *id.* at 21, 26, and depression *id.* at 26. Thus, it is undisputed that the Secretary found that Lankford met the necessary "A" criteria on or before June 30, 1979.

However, the dispute arises over whether the Secretary properly assessed Lankford's functional limitations under the "B" criteria. The "B" criteria of Listing Section 12.08 requires the following functional limitations:

B. Resulting in three of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P, appendix 1, listing section 12.08. The listings themselves include definitions of key terms which are to provide guidance in evaluating mental impairments. For example, the term "marked" is defined:

Where 'marked' is used as a standard for measuring the degree of limitation, it means more than moderate, but less that extreme. A marked limitation may arise when several activities or functions are impaired or even when one is impaired, so long as the degree of limitations is such as to seriously interfere with the ability to function independently, appropriately and effectively.

20 C.F.R. pt. 404, subpt. P, appendix 1, § 12.00(C). Further, the term "social functioning" is defined as

an individual's capacity to interact appropriately and communicate effectively with other individuals ... Impaired social functioning may be demonstrated by a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, social isolation, etc. ... Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority, e.g., supervisors or cooperative behaviors involving co-workers.

*Id.* at § 12.00(C)(4). Finally, "deterioration or decompensation in a work-like setting" is defined as:

[the] repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs and symptoms ... with an accompanying difficulty in maintaining ... social relationships, and/or maintaining concentration, persistence, or pace ... Stresses common to the work environment include decisions, attendance, schedules, completing tasks, interactions with supervisors, ... peers, etc.

*Id.* at § 12.00(C)(4).

The Secretary found that Lankford's depression and chronic anxiety resulted in only a "slight" restriction on his daily living; "moderate" difficulties in maintaining social functioning; and that he "often" experienced deficiencies in concentration, persistence or pace. J.App. at 29. The Secretary further found that Lankford had only deteriorated or decompensated once or twice in a work-like setting which caused him to withdraw or exacerbated his symptoms. *Id.*

Based upon these findings, the Secretary asserted that Lankford did not meet any of the "B" criteria in Listing Section 12.08. The magistrate, in a carefully reasoned and well-substantiated opinion, found that the Secretary's findings on the "B" criteria were not supported by substantial evidence. We agree.

For example, the Secretary found that Lankford had only "once or twice" experienced deterioration or decompensation at work or in a work-like setting. *Id.* This finding is not supported by substantial evidence. In fact, as the magistrate found, Lankford has experienced numerous incidents of such deterioration or decompensation. For example, the ALJ found that from 1967 to 1974, Lankford "left numerous jobs because of his drinking." *Id.* at 17. Even as early as 1964, when Lankford was in the military, he experienced difficulty with authority figures. *Id.* at 158. In

fact, Lankford left the service with a 10% disability due to anxiety. In addition, Lankford testified that his job as a nursing home aide was so stressful that he had to leave twice to see a doctor at the VA hospital because he was experiencing high blood pressure, dizziness and was hyperventilating due to his nerves. *Id.* at 65. The ALJ characterized this job as an unsuccessful work attempt. *Id.* at 16. Lankford was fired from his job as a maintenance technician at a dialysis clinic. *Id.* He left one job setting up mobile homes after being hospitalized because of his nerves. *Id.* at 66. When he worked as a maintenance man for a vocational school, he left because he could not get along with the supervisor. *Id.* at 76.

Further, the undisputed evidence shows that he deteriorates even in mildly stressful situations. For example, when Lankford was in VAHT in May 1978 and the social worker could not reach his wife at work, he flew into a rage, left the hospital and went out into the rain threatening to kill himself. *Id.* at 181. In the most recent incident in the record, which took place on July 19, 1989, Lankford, who was "depressed and real anxious over [his Social Security] hearing [scheduled for the next day], ... shot the phone off the wall" and pointed the gun at his eye threatening suicide. *Id.* at 78. Based upon this evidence, we find that the record demonstrates that Lankford has had numerous incidents of deterioration and decompensation. Thus, the Secretary's finding that Lankford had only had one or two such incidents is not supported by substantial evidence.

The Secretary also found that Lankford's ability to maintain social functioning was only moderately impaired. This finding also dramatically understates the degree of impairment based upon the evidence in the record. The record includes substantial evidence of persistent problems involving physical violence against his wife and family members. The Secretary and the district court rely on the fact that Lankford managed to get married a number of times. However, there is a flip side. He also was divorced four times, and each relationship

was fraught with difficulty and emotional trauma. The record also shows that Lankford has consistently demonstrated hostility to neighbors, with one incident resulting in his being arrested for assault, and another involving a threat to persons with a rifle. Lankford also had difficulty with social workers and with supervisors. Further, all of Lankford's psychological reviews from 1974 until 1988 have noted that Lankford's antisocial behavior and "inability to get along with others" were central to his mental disorders. We agree with the magistrate that substantial evidence supports a finding that Lankford's social functioning is severely limited. Thus, the evidence more than satisfies the requirement that the applicant's impairments result in "marked difficulties in social functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, listing section 12.08(B)(2).

Finally, the Secretary found that Lankford was only slightly limited in his daily life by his impairments. This finding is also belied by the record. The record is replete with suicide attempts, inability to work or act appropriately in social situations, violent behavior towards others and withdrawn and dependent behavior resulting in seemingly endless stays in VA hospitals. Lankford was hospitalized a total of sixty-six days in 1975, seventy-four days in 1976, fifty-two days in 1977 and sixty-four days in 1978. These continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress indicate at the very least a "marked" functional impact on Lankford's daily life. To characterize the unequivocal plethora of evidence in the record as resulting in only a "slight" impairment is simply a travesty.

The Secretary, though he did not engage in the precise on-the-record analysis of the requirements of Listing Section 12.08, rationalized his findings by asserting that each time that Lankford was discharged from the hospital, he seemed to have responded to treatment and was reportedly capable of returning to regular employment. However, the continued symptoms and hospitalizations suggest otherwise. Though the hospitals persistently claimed that Lankford could return to work, he persistently proved he was unable to do so.

In light of the evidence in the record, and the legal standards articulated for analysis of mental impairments under Listing Section 12.08, criteria "B", we find that the Secretary's decision was not supported by substantial evidence. Further, we find that the uncontroverted evidence articulated above supports a finding of disability because Lankford's combined impairments are equal to a listed impairment under 20 C.F.R. pt. 404, subpt. P, appendix 1. As described above, if at any time during the sequential analysis an applicant is found disabled, the inquiry must end without proceeding to the subsequent steps. *See Mowery*, 771 F.2d at 969. Therefore, we need not consider Lankford's second contention that the Secretary erred in finding he could return to his past relevant work.

### III.

For the foregoing reasons, we find the Secretary erred in failing to find Lankford disabled under step three of the sequential analysis because his combined impairments were equivalent to a listed impairment. As this is a legal determination, no remand is required for further findings by the Secretary. *Id.* at 973. The Secretary's decision is accordingly REVERSED and we direct the Secretary to provide Lankford benefits consistent with this opinion.