70 F.3d 1283
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Margie S. WILSON-JOHNSON, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,[1] Defendant-Appellee.
 No. 95-7040.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1995.
 
 Before TACHA and BARRETT, Circuit Judges, and BROWN,*** Senior District Judge.
 ORDER AND JUDGMENT[2]
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff appeals the district court's order affirming the decision of the Secretary to deny plaintiff's applications for disability insurance and supplemental security income (SSI) benefits. The Secretary determined, at step five of the sequential analysis, see 20 C.F.R. 404.1520, 416.920, that although plaintiff could not return to her past relevant work, she could perform a full range of unskilled light work and, therefore, was not disabled. Plaintiff does not take issue with the Secretary's assessment of her physical abilities, but does challenge the Secretary's decision as it relates to her mental impairment. We exercise jurisdiction under 42 U.S.C. 405(g) and 28 U.S.C. 1291 and reverse.
 
 
 3
 Plaintiff filed her applications for benefits in May 1991, alleging disability since January 15, 1987. The Administrative Law Judge (ALJ) determined, however, that, because plaintiff failed to appeal an earlier denial of benefits in 1990, and no reason existed to reopen the earlier application, the earlier denial was res judicata on the issue of disability before March 1, 1990. Plaintiff does not contest this determination. Because plaintiff was last insured for benefits on December 31, 1991, to obtain disability insurance benefits, she must establish that she became disabled between March 1, 1990, and December 31, 1991. To obtain SSI benefits, plaintiff need establish only that she was disabled when the Secretary made her final decision, but plaintiff cannot receive SSI benefits for the period that preceded her present application for benefits. See Kepler v. Chater, No. 95-5040, 1995 WL 607022, at * 1 ( 10th Cir. Oct. 17, 1995)(to be reported at 68 F.3d 387).
 
 
 4
 After conducting a hearing in April 1992 at which both plaintiff and a vocational expert testified, the ALJ concluded that, although she could not perform her past relevant work, which required medium exertion, plaintiff could perform a full range of light and sedentary work and, therefore, was not disabled. On administrative appeal, the Appeals Council vacated the ALJ's opinion and remanded the action for further proceedings.
 
 
 5
 The Appeals Council noted that the ALJ had failed to make a credibility determination concerning plaintiff's statements about her alleged physical and mental impairments, and directed the ALJ to further evaluate her subjective complaints on remand. The Appeals Council also stated that the ALJ's decision did not "contain sufficient rationale for disregarding the psychiatric assessment in Exhibit 29 [a report by Dr. Grubb] and the physical limitations in Exhibit 25 [a report by Dr. Stokes]." Appellant's App., Vol. II at 302. The Appeals Council, therefore, directed the ALJ to "[g]ive further consideration to the claimant's residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations ..., including rationale for the "B" criteria rating in the Psychiatric Review Technique Form." Id. at 303. Finally, the Appeals Council directed the ALJ to obtain supplemental evidence from a vocational expert, if necessary, regarding the effects of plaintiff's limitations on her occupational base.
 
 
 6
 Following remand by the Appeals Council, the ALJ obtained a psychiatric evaluation of plaintiff by Dr. Krueger. The ALJ then conducted a supplemental hearing at which plaintiff testified; no additional vocational expert testimony was solicited. The ALJ issued a new opinion in June 1993, in which he found that plaintiff's impairments limited her to performing light work. After discussing the reports of Drs. Grubb and Krueger about plaintiff's mental status, the ALJ concluded that plaintiff had "some functional limitations on the basis of depression." Id. at 15. Specifically, the ALJ found that plaintiff had "some deficit of concentration and some mild memory impairment," which, he concluded, would preclude plaintiff from performing skilled or semi-skilled work. Id. The ALJ determined that plaintiff's limitations would not, however, preclude her from performing "routine repetitive work requiring a lower level of concentration, that is, unskilled work activity." Id.
 
 
 7
 The ALJ then purported to use the Medical-Vocational Guidelines (grids) as a framework, and concluded that, based on plaintiff's age (51), her education (limited), and her ability to perform unskilled light work, plaintiff was not disabled. See Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.11. When the Appeals Council denied review, the ALJ's decision became the final decision of the Secretary.
 
 
 8
 Plaintiff raises several challenges to the ALJ's assessment of her mental impairment, both at step three and at step five of the sequential analysis. At step three, plaintiff contends that the ALJ's determination that she did not meet the listings for an affective disorder, see 40 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04, was flawed in three respects. First, the ALJ failed to discuss in his opinion the evidence he relied on in reaching the conclusions about plaintiff's disorder that he recorded on the Psychiatric Review Technique Form (PRT). See Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). Second, the ALJ failed to make any determination as to whether plaintiff's statements about her mental impairment and its effect on her ability to work were credible. Finally, the ALJ misinterpreted Dr. Krueger's answers on the Medical Assessment of Ability to Do Work-Related Activities (Mental) form he completed in connection with his evaluation of plaintiff. At step five, plaintiff contends that the ALJ erred in failing to obtain testimony from a vocational expert about the effect of plaintiff's mental impairments on her ability to work.
 
 
 9
 "We review the Secretary's decision to determine whether it is supported by substantial evidence and whether the Secretary applied the correct legal standards." Washington, 37 F.3d at 1439. We must closely examine the record to determine whether substantial evidence supports the Secretary's decision. Id. The Secretary's failure to apply the correct legal standards, or to show us that she has done so, is grounds for reversal. Id.
 
 
 10
 We turn first to the ALJ's evaluation of plaintiff's mental impairment at step three of the sequential analysis. We begin by noting that, because plaintiff never sought treatment for any mental impairment--she said she could not afford to see a doctor--the only evidence before the ALJ relating to plaintiff's mental impairment consisted of two psychiatric evaluations made at the request of the Social Security Administration (SSA), and plaintiff's own statements about her mental condition. Dr. Grubb conducted the first examination for the SSA in September 1991, and Dr. Krueger conducted the second in March 1993.
 
 
 11
 In her brief on appeal, plaintiff implies that the ALJ found that she suffered from depression of sufficient severity to meet the criteria in 40 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04(A). See Appellant's Br. at 12. The ALJ, however, did not find that plaintiff's depression met the Part A criteria. To satisfy those criteria, plaintiff's depression would have had to have caused at least four of the symptoms enumerated in 12.04(A)(1). The ALJ, however, found that plaintiff exhibited only two of the enumerated symptoms: difficulty concentrating or thinking; and thoughts of suicide. See Appellant's App., Vol. II at 21.
 
 
 12
 The ALJ's determination that plaintiff did not exhibit any of the other enumerated symptoms may be due, in part, to his failure to evaluate plaintiff's subjective statements about her mental impairment. Despite the Appeals Council's explicit directions on remand, the ALJ's opinion contains virtually no discussion of plaintiff's statements about her mental impairment, much less an assessment of the credibility of those statements.
 
 
 13
 In her disability report, submitted in May 1991, plaintiff stated that she had thoughts of suicide and could not sleep or eat. At a supplemental interview conducted later that month, plaintiff stated that she had trouble sleeping and could not fall asleep even when she was exhausted. Plaintiff also stated: "Sometimes I feel that if I was not around anymore that everyone would be better off. I'm tired of being sick and not able to do the things I use[d] to. Also, sometimes I feel like crying alot." Id. at 148.
 
 
 14
 At the April 1992 hearing, plaintiff testified that it made her nervous and stressful to be around people when they kept talking, and she had to turn around and leave. She also said that almost every day she became aggravated with her inability to perform some task correctly and left the task uncompleted. At the May 1993 hearing, plaintiff testified that, four or five times a day, she had temper outbursts when things aggravated her, and that she found herself having to sit down and consciously relax three or four times a day to relieve stress. She also testified that she had trouble remembering things and could not, for instance, remember where she had put something ten minutes later.
 
 
 15
 If the ALJ were to find plaintiff's descriptions of her limitations credible, he might change his determination at either step three of the sequential analysis (sleep disturbance and feelings of worthlessness are two of the other symptoms enumerated in 12.04(a)(1)), or at step five. The ALJ, therefore, should have evaluated plaintiff's credibility as part of his analysis, and his failure to do so constitutes reversible error. See Kepler, 1995 WL 607022, at * 4-5 (discussing ALJ's duty to make credibility determinations and to give specific reasons for those determinations); Williams ex rel. Williams v. Bowen, 859 F.2d 255, 261 (2d Cir.1988)("The failure to make credibility findings regarding [claimant's] critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.").
 
 
 16
 Plaintiff's other two challenges to the ALJ's step three determination are related. Plaintiff contends that the ALJ did not explain sufficiently the rationale for his conclusions about the "Part B" criteria on the PRT he completed, and suggests that the ALJ's conclusions may have been based on a misinterpretation of Dr. Krueger's opinion. Section IV of the PRT relates to the "Part B" criteria of the listings and seeks an evaluation of the degree of functional loss a claimant has suffered as a result of her mental impairment(s). See Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir.1995).
 
 
 17
 On the PRT, the ALJ determined that plaintiff's depression caused a "slight" "restriction of activities of daily living" and "slight" "difficulties in maintaining social functioning," that it "often" caused "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," but "never" caused "episodes of deterioration or decompensation in [a] work-like setting." Appellant's App., Vol. II at 22. In the body of his opinion, the ALJ discussed some of the evidence concerning plaintiff's depression and concluded that she had memory and concentration limitations, but he did not relate any of the evidence to his conclusions about the Part B criteria. This failure contravened not only the Appeals Council's directions on remand, but our decisions in Washington, 37 F.3d at 1442, and Cruse, 49 F.3d at 618.
 
 
 18
 The ALJ's failure to state what evidence he relied on in reaching his conclusions on the PRT is particularly troubling here, because the ALJ's PRT conflicts with some of the record evidence. For instance, Dr. Grubb stated in his report that plaintiff had "intermittent[ ]" "episodes of deterioration or decompensation under stress," and that "[i]ncreased decompensation may occur if under severe stress in the work setting." Appellant's App., Vol. II at 287, 288. The ALJ, however, found that plaintiff "never" experienced "episodes of deterioration or decompensation in [a] work-like setting." Id. at 22.
 
 
 19
 Likewise, Dr. Krueger reported, on the Medical Assessment of Ability to Do Work-Related Activities (Mental) form, that plaintiff's abilities to "follow work rules," "relate to co-workers," "deal with [the] public," "use judgment [with] the public," "interact with supervisors," and "deal with work stresses," were only "fair." Id. at 307. The form defines "fair" as "seriously limited but not precluded." Id. We have held that the phrase "seriously limited but not precluded" "is essentially the same as the listing requirements' definition of the term 'marked.' " Cruse, 49 F.3d at 618. The ALJ here, however, found that plaintiff had only "slight" "difficulties in maintaining social functioning," Appellant's App., Vol. II at 22, which is defined as "an individual's capacity to interact appropriately and communicate effectively with other individuals," 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00(C)(2).
 
 
 20
 On appeal, the Secretary argues that the ALJ's opinion reflects that he did not rely on the Medical Assessment of Ability to Do Work-Related Activities (Mental) form that Dr. Krueger completed, but rather on the narrative portion of Dr. Krueger's report. The ALJ's discussion of both the narrative and the Medical Assessment of Ability to Do Work-Related Activities (Mental) portions of Dr. Krueger's report, however, suggests that he relied on both portions. Moreover, an ALJ may not, as the Secretary suggests, rely on some portions of a report, while disregarding others. See Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir.1984)("[T]he Secretary's attempt to use only the portions [of a doctor's report] favorable to her position, while ignoring other parts, is improper."); Smith v. Bowen, 687 F.Supp. 902, 904 (S.D.N.Y.1988)("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion.") (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984); Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir.1983); Ceballos v. Bowen, 649 F.Supp. 693, 700 (S.D.N.Y.1986)). At a minimum, the ALJ would have to explain his reason(s) for rejecting part of Dr. Krueger's report. See, e.g., Garfield v. Schweiker, 732 F.2d 605, 609 (7th Cir.1984)(holding that if the ALJ and Appeals Council had reason to reject certain reports, "those reasons should have been stated").[3]
 
 
 21
 On remand, the ALJ should review Dr. Krueger's Medical Assessment of Ability to Do Work-Related Activities (Mental) form in light of our opinion in Cruse. Also, the ALJ should explain more clearly what evidence he relies on in reaching the conclusions he records on the PRT. If the ALJ rejects portions of either Dr. Grubb's or Dr. Krueger's report, he should explain his reason(s) for doing so.
 
 
 22
 We turn, now, to plaintiff's argument that the ALJ erred in making the step five determination without the benefit of vocational testimony.[4] Although the ALJ determined that plaintiff had nonexertional impairments in the form of memory loss and deficits of concentration, he did not solicit any expert testimony about the effect of these nonexertional impairments on plaintiff's ability to perform other jobs in the national economy. Instead, the ALJ decided the vocational issue on his own, concluding that plaintiff would be limited to unskilled work. The ALJ then applied the grids to find plaintiff not disabled.[5]
 
 
 23
 The ALJ's conclusion that plaintiff's nonexertional impairments only limited her to unskilled work is without any support in the record and is a product of reversible error. "Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." Hargis, 945 F.2d at 1491 (emphasis added); see also Cruse, 49 F.3d at 619. On remand, if the ALJ reaches step five of the sequential analysis, he must solicit expert vocational testimony or other similar evidence to establish that plaintiff can perform other work in the national economy despite her exertional and nonexertional limitations. The questions propounded to the vocational expert should take into account the full extent of plaintiff's impairments, including any additional limitations the ALJ may find after assessing the credibility of plaintiff's statements about her limitations and reevaluating the reports of Drs. Grubb and Krueger.
 
 
 24
 The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED for further proceedings in accordance with this order and judgment.
 
 
 
 [1]
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision
 
 
 ***
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [3]
 If the ALJ finds that portions of Dr. Krueger's report conflict, the regulations provide that the ALJ should "seek additional evidence or clarification" from Dr. Krueger. 40 C.F.R. 404.1513(e)(1)
 
 
 [4]
 The ALJ's 1993 decision does not appear to be based, in any respect, on the testimony given by the vocational expert at the first hearing in April 1992. Reliance on that testimony would be improper, in any event, because the vocational expert was not asked to assume that plaintiff had any memory or concentration limitations when giving his opinion about what jobs she might perform. See Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991)(" '[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.' ") (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir.1990))(alteration in original)
 
 
 [5]
 We note that the ALJ said he was using the grids only as a framework. "Despite what may be suggested by the use of the word 'framework,' whenever an ALJ fails to take vocational testimony, he must be deemed '[i]n reality' to have 'relied exclusively on the grid to show the existence of jobs claimant could perform.' " Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 n. 4 (1st Cir.1989)(quoting Figueroa-Rodriguez v. Secretary of Health & Human Servs., 845 F.2d 370, 372 (1st Cir.1988))(alteration in original)