Latulippe v. SSA                    CV-95-82-SD    03/07/96
                 UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEW HAMPSHIRE


Henry Latulippe


     v.                                    Civil No. 95-82-SD

Commissioner, Social Security Administration


                            O R D E R


     Pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), plaintiff Henry Latulippe seeks judicial review

of a final decision of the Commissioner of the Social Security

Administration,[1] rendered following a remand order issued by this

court.  Presently before the court are (1) plaintiff's motion to

reverse the Secretary's decision and (2) defendant's motion to

affirm the Secretary's decision.

_____

     [1]The court notes that on March 31, 1995, the Social Security
Administration was separated from the Department of Health and
Human Services, becoming an autonomous agency.  Social Security
Independence and Program Improvements Act of 1994, Pub. L. No.
103-296, § 106(d)(2), 108 Stat. 1464, 1477 (1994).  The
Commissioner of Social Security has therefore been substituted
for the Secretary of Health and Human Services as the defendant
in this action.  However, because all the events relevant here
occurred prior to the change, in this order the court will refer
to the defendant as Secretary from this point on.

<u>Background</u>[2]

Plaintiff Henry Latulippe was born on May 1, 1947, and has completed an eighth-grade level of education. Transcript (Tr.) 193, 230. He has worked in the past as an auto body shop operator and owner, as well as a construction foreman. Tr. 230.

Latulippe has a history of coronary artery disease, Tr. 394, and other ailments. In March and April of 1986, he was treated and hospitalized for chest pain on three occasions and diagnosed with acute coronary insufficiency, arterial hypertension, psoriasis, gout, and exogenous obesity. Tr. 250, 263. On April 29, 1986, plaintiff was admitted to the Massachusetts General Hospital, where he received angioplasty surgery.[3] Tr. 343.

In January of 1988, plaintiff was treated for alcohol, cocaine, and polydrug dependence at St. Joseph Hospital in Nashua, New Hampshire, and was diagnosed with, among other things, anxiety depression. Tr. 298. In May of that same year, plaintiff was hospitalized again for chest pains. Tr. 309. Subsequent to his hospitalization, plaintiff's reports of chest

_____

[2]A more thorough recitation of the facts can be found in the Report and Recommendation of Magistrate Judge Barry dated March 30, 1993.

[3]Angioplasty is a procedure to open clogged blood vessels. <u>See</u> DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 79-80 (W.B. Saunders Co., 28th ed. 1994).

pain continued in December of 1988, Tr. 352-53, and again in April of 1990, after he inhaled smoke from a fire in his family's store, Tr. 358-59.

Following further complaints of chest pain and a recatheterization which revealed significant stenosis (or occlusion) in seven blood vessels, Tr. 396-97, Latulippe underwent quadruple bypass surgery on December 26, 1990, Tr. 386.

## Procedural History

On April 23, 1990, plaintiff filed an application for a period of disability and for disability insurance benefits, alleging an inability to work since April 28, 1988. Tr. 193-95. Plaintiff had previously filed two other such applications on December 21, 1988, Tr. 141, and June 22, 1989, Tr. 170, each also alleging an inability to work since April 28, 1988. The initial application was denied on February 9, 1989. Tr. 160. Although undated, the denial of the second application appears to have occurred in November of 1989. Tr. 10, 183, 465.

On August 14, 1991, a de novo hearing was held on plaintiff's April 1990 application before an Administrative Law Judge (ALJ).[4] Tr. 43. At such hearing, the ALJ heard testimony

_____

[4]Plaintiff's April 1990 application was initially denied on June 14, 1990, Tr. 205, and upon reconsideration by the Secretary on November 28, 1990, Tr. 220.

from plaintiff, Tr. 51-107, plaintiff's wife Nancy Grassman, Tr. 107-24, and Ralph Richardson, a vocational expert (VE), Tr. 127-39. In a decision dated February 11, 1992, the ALJ stated that his assessment was limited to the period of time when claimant's second application for benefits was denied, November 1989, through June 30, 1990, the date he was last insured for disability insurance benefits. Tr. 10.

The ALJ went on to find that Latulippe's eligibility for benefits could proceed along steps one through four of the sequential evaluation process. Tr. 20-21. Such process, set forth at 20 C.F.R., ch. III, §§ 404.1520 and 416.920, is summarized as follows: (1) The Secretary determines whether the claimant is currently involved in substantial gainful activity. 20 C.F.R. Ch. III, § 404.1520. (2) If the claimant is not so involved, the Secretary considers whether the claimant has a "severe impairment" which significantly hinders his physical or mental ability to engage in basic work activities. Id. The claimant must prove that his impairment prevents him from performing his former type of work. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary, 690 F.2d 5, 7 (1st Cir. 1975)). (3) If the claimant suffers from a severe impairment, then the inquiry is whether the claimant has an impairment which (a) meets a durational requirement and (b) is

4

listed in Appendix 1 of the regulations.  20 C.F.R., Ch. III, §
404.1520.  (4) In the event that a claimant does not have an
impairment specifically listed in Appendix 1, the inquiry is
whether, despite the claimant's severe impairment, he has the
residual functional capacity to perform his past work.  Id.  (5)
If the claimant is unable to perform his past work, the Secretary
has the burden of showing that other work exists in the national
economy which the claimant can perform.  Heggarty v. Sullivan,
947 F.2d 990, 995 (1st Cir. 1991).

The ALJ concluded, among other things, that (1) at step one,
plaintiff had not engaged in substantial gainful activity since
April 28, 1988, Tr. 20; (2) at step two, plaintiff's heart
condition and obesity represented a severe impairment during the
period from claimant's alleged onset date through June 30, 1990,
Tr. 16, 21; (3) at step three, plaintiff does not have an
impairment or combination of impairments listed in, or medically
equal to, one listed in the Secretary's listing of impairments,[5]
Tr. 21; and (4) at step four, claimant is unable to perform his
past relevant work, id.  The ALJ also concluded that plaintiff's
residual functional capacity for the full range of sedentary work
is reduced by his exertional limitations and that claimant "has
an eighth grade education, is not illiterate and does not have

_____

[5]See Appendix 1 to 20 C.F.R. Part 404, Subpart P.

5

significant difficulty with reading and writing."  Id.  The ALJ ultimately found that the claimant was not entitled to benefits because the Secretary met its burden at step five of showing the existence of jobs in the regional or national economy that claimant was capable of performing.  Tr. 22.  A VE testified that these jobs included security guard, automobile dispatcher, self-service gas station attendant, and parking lot attendant.  Id.

On August 26, 1992, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Secretary of Health and Human Services.  Tr. 4-5.

Plaintiff subsequently moved to reverse--and defendant moved to affirm--the decision of the Secretary.  On appeal to the district court, plaintiff argued, among other things, that "the jobs identified by the VE were improperly classified, exertionally unsuitable and ignored plaintiff's educational limitations."  Tr. 480.  This court affirmed the Report and Recommendation of United States Magistrate Judge William H. Barry, Jr., in which he denied both motions and remanded the action to the Secretary to consider evidence of plaintiff's disability from February 9, 1989, to June 30, 1990.  See Order, May 3, 1993 (Loughlin, S.J.); Report and Recommendation, March 30, 1993.

The Appeals Council issued an order on July 13, 1993, remanding the case to an ALJ for further proceedings "consistent with" the order of the district court. Tr. 610. Following remand, a supplemental hearing was held at which the ALJ heard testimony of plaintiff's sister, Virginia Nadeau. Tr. 668-84. After this hearing, the ALJ issued a decision on February 17, 1994, again finding claimant not entitled to a period of disability or to disability insurance benefits. Tr. 434. On December 21, 1994, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Secretary. Tr. 411-12.

In the present action, Latulippe moves for an order reversing the Secretary's final decision.[6] His general contention is that he is eligible for benefits at step five of the sequential evaluation process because "no jobs exist[] in the regional or national economy which he can perform at his reduced range sedentary work capacity." Plaintiff's Memorandum at 1-2.

---

[6]Latulippe also filed with this court a Motion to Reopen the Commissioner's Decision on January 3, 1994; said motion was denied on February 1, 1995.

<u>Discussion</u>

<u>1. Standard of Review</u>

Pursuant to the Social Security Act, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (Supp. 1994).

When reviewing a Social Security disability determination, the factual findings of the Secretary "shall be conclusive if supported by 'substantial evidence.'" <u>Irlanda Ortiz v. Secretary</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)). "[S]ubstantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Rodriquez v. Secretary</u>, 647 F.2d 218, 222 (1st Cir. 1981).

However, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Comm'n</u>, 383 U.S. 607, 620 (1966) (citing <u>NLRB v. Nevada Consolidated Copper</u>

Corp., 316 U.S. 105, 106 (1942)).  Moreover, the decision of the Secretary must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Secretary, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988) (citing Lizotte v. Secretary, 654 F.2d 127, 128 (1st Cir. 1981)).

It is incumbent on the Secretary "to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz, supra, 955 F.2d at 769 (citing Rodriguez, supra, 647 F.2d at 222).  Moreover, "the resolution of conflicts in the evidence is for the Secretary, not the courts."  Id.; Evangelista v. Secretary, 826 F.2d 136, 141 (1st Cir. 1987); see also Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Burgos Lopez v. Secretary, 747 F.2d 37, 40 (1st Cir. 1984).

Since determinations regarding factual issues and the credibility of witnesses are entrusted to the Secretary, whose findings should be accorded great deference, see, e.g., Frustaglia v. Secretary, 829 F.2d 192, 195 (1st Cir. 1987), the court "'must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz, supra, 955 F.2d at 769 (quoting Rodriguez, supra, 647 F.2d at 222).

9

## 2. Plaintiff's New Evidence

In the district court's order of May 3, 1993 (Loughlin, S.J.) (hereinafter "Original Order"), the court remanded the case to the Secretary "to consider evidence of the plaintiff's disability from February 9, 1989[,] to June 30, 1990," thereby ostensibly reopening the entire record. Original Order at 9. The crux of the issue presently before the court is whether the district court intended by this statement to reopen the entire record, or whether, instead, the court simply instructed the ALJ to consider--or clarify whether he had considered--specific evidence relating to a limited time period. The text of the opinion, as well as that of the Report and Recommendation of the magistrate judge and the motions submitted by the parties at the time, lead this court to conclude that the purpose and scope of the remand was solely for the ALJ to consider medical evidence relating to the period between February and November of 1989.[7]

_____

[7]A more thorough explanation can be found in the court's order of May 3, 1993. Briefly, the issue before the court concerned the ALJ's assertion that he was assessing disability from November 1, 1989, though June 30, 1990, and was therefore apparently not reopening plaintiff's second application of disability, which was denied in November of 1989. The court found that the ALJ had applied the wrong standard in deciding against reopening plaintiff's second application. Therefore, the court remanded the action back to the ALJ to apply the correct standard. If the ALJ decided to reopen the plaintiff's second application, the court further ruled the ALJ should consider medical evidence dating from the denial of plaintiff's first application, which occurred February 9, 1989. According to the

10

The conclusion is buttressed by the following statement in the May 3, 1993 order:

> Although the Secretary contends that the ALJ considered all of the medical evidence submitted by plaintiff for the period prior to the expiration of his period of insured status, it is not clear from the record, especially because of the ALJ's statement that he was not reopening plaintiff's prior application, what weight if any the ALJ gave to that particular evidence for the period of plaintiff's prior application in making his findings.

Original Order at 8.

In its Original Order, the district court also explicitly affirmed several of the ALJ's findings. For example, the court found that substantial evidence supported the ALJ's finding that plaintiff was not illiterate. Original Order at 6-7. The court further opined,

> the ALJ's findings with respect to plaintiff's physical and educational limitations and the effect those limitations may have on plaintiff's performance of jobs in the national economy, being substantially supported by the record, require the court to affirm that part of the decision of the Secretary finding plaintiff capable of performing work in the national economy.

Original Order at 7.

---

report and recommendation of the magistrate, this evidence could potentially aid plaintiff in proving disability for the entire time period (through June 30, 1989) because plaintiff suffered from a "degenerative" condition. See Report and Recommendation, Tr. 476.

11

Upon further consideration, the court modified its ruling,[8] but reaffirmed that the Secretary had properly concluded that plaintiff could perform the job of auto dispatcher.  Order of July 26, 1993 (Loughlin, S.J.) at 4.  In so ruling, the court considered plaintiff's capabilities in light of the reasoning, mathematical, and language development skills required by the job.  Given the explicit findings within both orders, the most logical interpretation of the remand order is that the court intended to affirm the Secretary's finding as to plaintiff's non-illiteracy, but nonetheless remanded the cause back to the Secretary to clarify whether it had considered medical evidence relating to the period from February through November 1989.[9]

Plaintiff argues that the ALJ had the discretion to consider "new and material" evidence of plaintiff's illiteracy during the supplemental hearing.  This presents a potentially difficult

---

[8]Specifically, the court found that certain jobs identified by the VE--that of security guard, self-service station attendant, and parking lot attendant--required exertional levels beyond plaintiff's capabilities.  Order of July 26, 1993 (Loughlin, S.J.) at 6.

[9]In his report of February 17, 1994, the ALJ clarified that he had considered this evidence in his earlier report:  "[T]he prior decision erroneously stated that the agency denial of the claimant's prior June 22, 1989 application was not reopened.  Such reopening, however, was intended and effectuated by the Administrative Law Judge."  Tr. 422.  Accordingly, this correction by the ALJ renders the district court's prior concerns moot, and would by itself justify affirmance.

question: whether the ALJ can properly consider new and material evidence bearing on an issue already decided by the district court and beyond the scope of the remand order. Rather than directly resolve this issue, the court will take the liberty of determining, in the first instance, whether the evidence plaintiff seeks to introduce is new and material.

The court's decision to make the newness/materiality determination, rather than to send the case back to the Secretary, is supported by a number of considerations. First, the court has the power to make the newness/materiality determination as part of the remand powers conferred by sentence six of section 405(g).[10] In addition, given the scope of the

_____

[10]The Social Security Act's judicial review provisions authorize two, and only two, forms of remand--so-called "fourth sentence remands" and "sixth sentence remands." See Melkonyan v. Sullivan, 501 U.S. 89, 97-99 (1991). Under the fourth sentence of section 405(g), a court may enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Accordingly, the significant feature of a sentence four remand is that it is made in conjunction with a substantive ruling by the district court to either affirm, modify, or reverse the Secretary's decision.

In contrast, the sixth sentence of section 405(g) describes an "entirely different kind of remand." Id. at 98 (quotation omitted). This form of remand is implicated upon discovery of new and material evidence that (1) was previously unavailable to the claimant during the administrative proceeding and (2) has the potential to change the outcome of that proceeding. Id. In order to justify such a remand, the evidence cannot be merely cumulative, but, rather, must meaningfully relate to the basis of the earlier decision. Evangelista, supra, 826 F.2d at 140-41. In addition, to avoid a "yo-yo effect," the claimant must articulate good cause to justify his prior failure to present the

13

remand order, the court cannot find that the ALJ committed a legal error warranting remand when it deferred to the district court's prior ruling. Indeed, good authority supports that the ALJ does not have the power to consider evidence beyond that contemplated by the remand order:[11]

> Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. . . . <u>Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review</u>.

<u>Sullivan v. Hudson</u>, 490 U.S. 877, 885-86 (1989) (citations omitted) (emphasis added). Finally, it is beyond peradventure that the interests of all involved can be best served by the court's immediate attention to the matter, and would be significantly less served by yet another remand to the ALJ.

Plaintiff asserts that his school records and an evaluation performed in 1993 by Dr. Scott N. Andrews, a psychologist, Tr. 606-08, constitute "new and material" evidence, although he

_____

evidence to the ALJ. <u>Id.</u> at 141.

[11]This proposition is further supported by the plain language of section 405(g), which provides that the Secretary's findings are <u>conclusive</u> if supported by substantial evidence, which this court has already found in the original order.

14

admits that it "fortifies" earlier testimony by him, his wife, and his sister that he can't read. Plaintiff's Memorandum at 10. The school records showed, inter alia, that Latulippe failed most of his classes when he was in grades six through eight and that he left school in the middle of the eighth grade because of scholastic difficulty. Tr. 601. Dr. Andrews' report documents plaintiff's performance on tests designed to evaluate reading, writing, and language development, and concludes that he is illiterate. Tr. 608. The ALJ declined plaintiff's request to consider this evidence because the district court had already affirmed the ALJ's prior determination that Latulippe was not illiterate. Tr. 423.

The court agrees with the defendant that (1) plaintiff had ample opportunity to present this evidence at the initial hearings before the Secretary, at which the literacy issue was fully developed, and fails here to offer an adequate explanation of why the evidence was not produced before; and (2) the issues raised by plaintiff have been previously considered, analyzed, and ruled on by both the magistrate judge and the district court. It follows that this evidence is not "new and material," justifying a remand order from this court.

In an apparent attempt to sidestep the "new and material" requirement, plaintiff makes two further arguments. First,

15

plaintiff contends that under the regulations governing the scope of the administrative hearing following a remand by a federal court, any issue relating to plaintiff's claim may be considered by the ALJ, whether or not it was raised in the prior administrative proceedings, see 20 C.F.R. § 404.983 (1995). Another regulation apropos to the issue is 20 C.F.R. § 404.977, which provides,

> **§ 404.977 Case remanded by Appeals Council.**
> . . . .
> (b) *Action by administrative law judge on remand.* The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.

20 C.F.R. § 407.977 (emphasis added). The court's interpretation of these regulations is that, while an ALJ has the discretion to consider matters outside that which is specified in a remand order, such regulations would not apply here, where the district court has previously ruled that plaintiff's non-illiteracy is supported by substantial evidence. Indeed, to reopen the literacy issue after the federal court had already ruled that this finding was supported by substantial evidence (and the Appeals Council's remand essentially incorporated the district court's order) most likely would represent an action

16

"inconsistent with" the Appeals Council's remand order and would thus be in direct contravention of 20 C.F.R. § 404.977(b).

Second, plaintiff, noting that the ALJ discusses Dr. Andrews' evaluation in his February 17, 1994, decision, contends the ALJ thereby reopened the issue of plaintiff's literacy as a matter of administrative discretion. This assertion is problematic for two reasons. As discussed above, it is unlikely that the ALJ would have the power to exercise such discretion in the instant case, given the district court's findings. In addition, the ALJ's explicit statement that he was deferring to the district court ruling on the issue of literacy negates any suggestion of reopening.

Accordingly, as the ALJ neither reopened--nor had the authority to reopen--the issue of claimant's literacy, the court is inclined to here incorporate the prior ruling affirming the ALJ's decision on this issue. However, before doing so, the court will consider one last possible window of opportunity for the plaintiff. The Seventh Circuit has recognized that under certain unusual circumstances a court may depart from the law of the case. Under the doctrine of the law of the case, "[a]n administrative agency is bound on remand to apply the legal principles laid down by the court . . . ." Chicago & N.W. Transp. Co. v. United States, 574 F.2d 926, 930 (7th Cir. 1978)

17

(citation omitted).  Such "legal principles" include both the applicable legal doctrine and the sufficiency of the evidence relevant to that doctrine.  Id.  The law of the case controls, however, only in the absence of a compelling reason to depart from it, such as the existence of "substantial new evidence introduced after the first review," or "a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous."  Id.[12] (citations omitted); accord Angevine v. Sullivan, 881 F.2d 519, 521 (7th Cir. 1989) (applying law of the case doctrine to social security case).

Even under the law of the case doctrine espoused by the Seventh Circuit, plaintiff has not succeeded in demonstrating that a reversal of the ALJ's decision on the literacy issue is warranted.  As the court opined previously, although it contradicted the testimony of the claimant and that of his wife, the ALJ's determination that the plaintiff was not illiterate was supported by substantial evidence.  Original Order at 5-6.  The court's reasoning was based on the observation that plaintiff had an eighth-grade education and was owner of an auto body shop for ten years in which he employed four persons, as well as on the

_____

[12]Another reason would be a Supreme Court decision after the first review that contradicts the decision of that review.

18

definition of illiteracy provided by federal regulations.[13]
Original Order at 6.

Thus, to summarize, from this court's review, there was no clear error in the Original Order affirming the Secretary's finding of nonilliteracy. Furthermore, plaintiff's evidence of his past educational records and the report of Dr. Andrews are not sufficiently material or new to permit remand, as there already exists a developed record on the issue of plaintiff's illiteracy, and plaintiff fails to provide an adequate explanation for why the "new" evidence was not previously submitted.

## 3. Vocational Expert's Testimony

Finally, plaintiff contends that substantial evidence does not support the ALJ's determination (finding 12) that plaintiff can perform the job of auto dispatcher.[14] Tr. 433.

---

[13]20 C.F.R. § 404.1564(b) provides in relevant part:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

[14]Plaintiff does not contest, here, the ALJ's finding that the job of auto dispatcher exists in numbers significant in the national economy.

Specifically, plaintiff challenges the VE's description of the job as "unskilled."  Such an error by the VE would be significant because the ALJ found plaintiff did not possess transferable skills to meet the entry requirements of skilled or semi-skilled work (finding 10).  Tr. 433.

Plaintiff's point is well taken.  The Secretary defines unskilled work as work that can be learned in thirty days, see 20 C.F.R. § 404.1568(a), but the DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991) (DOT) provides that the specific vocational preparation (SVP) for the position of motor vehicle dispatcher[15] is 5, which requires from six months to one year of training, see DOT at 216, 1009.  Thus, the VE's testimony contradicts the DOT.

However, given the posture of the case and plaintiff's failure to raise the issue earlier, the court cannot credit plaintiff's argument that the VE's error is so serious as to warrant remand and/or reversal.  The VE testified at the initial hearing held before the ALJ on August 14, 1991.  Tr. 43, 124-38.  At that time, plaintiff was represented by experienced and able counsel, who was given the opportunity to pose his own hypothetical questions, cross-examine the VE, and inquire into

---

[15]The DOT lists the motor vehicle dispatcher job at 249.167-014.

20

the source of the VE's testimony.  Plaintiff's counsel did not object to the VE's characterization of the auto dispatcher job as "unskilled."  Tr. 128.  Since that time, plaintiff has filed at least four discrete motions with this court that related, at least in part, to the adequacy of the VE's testimony. Plaintiff's Motion for Reversal and Benefits, filed Feb. 11, 1993; Plaintiff's Objection to the Magistrate's Report and Recommendation, filed April 19, 1993; Plaintiff's Motion for Reconsideration, filed June 21, 1993; and Plaintiff's Motion to Reopen, filed Jan. 3, 1994.  In each of said motions, plaintiff specifically challenged the ALJ's conclusion that he was capable of performing the job of auto dispatcher, and plaintiff often cited to the DOT to support his arguments.

Now plaintiff, represented by the same counsel, comes before this court for the fifth time--nearly four years after the testimony in question--offering a brand-new argument as to why the VE's testimony was deficient and contrary to the DOT. Plaintiff provides no reason or excuse for his failure to bring the matter to the attention of the court sooner.  Under these circumstances, plaintiff has not offered a sufficiently compelling basis for the court to upset the law of the case set by the court (Loughlin, S.J.) in the original order and the order

on reconsideration.  In any case, it is unclear how the court can give the plaintiff another bite of an apple that has been eaten and long digested.  Cf. Evangelista, supra, 826 F.2d at 142-43 (where claimant was able to fairly present his case and ALJ's decision was based on substantial evidence, appeals court will not remand for presentation by claimant of arguably "new and material evidence" in absence of "good cause" adequate to excuse failure to offer evidence sooner).

The court rejects plaintiff's argument for an alternative reason: it is likely that the DOT would not override the VE's testimony in the instant situation.  The ALJ takes administrative notice of "reliable job information" available from various governmental sources, including the DOT.  See 20 C.F.R. § 404.1566(d), Subpart P, app. 2, § 200.00(b).  However, when complex issues are raised, for example whether a claimant's work skills can be used in other work, the Secretary may rely upon a vocational expert.  See 20 C.F.R. § 404.1566(e).[16]

_____

[16]The regulations provide in relevant part:

> (d) *Administrative notice of job data.*  When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), we will take administrative notice of reliable job information available from various governmental

The circuits are divided as to whether--and to what extent--the DOT should control over contradictory VE testimony. At least one court has held that an ALJ may rely solely on a vocational expert's testimony even if it is inconsistent with the DOT. See Conn v. Secretary, 51 F.3d 607, 610 (6th Cir. 1995) (vocational expert entitled to describe jobs as "sedentary" despite DOT's classification of jobs with same names as "light" or "medium"); Logan v. Shalala, 882 F. Supp. 755, 764 (C.D. Ill. 1995) ("[T]he DOT's requirements are not controlling and they are to be applied in light of the vocational expert's professional knowledge regarding one's ability to perform an identified job."); see also Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir. 1995) (ALJ may rely on expert testimony contradicting DOT, "but only insofar as the record contains persuasive evidence to support the

---

and other publications. For example, we will take notice of--
   (1) *Dictionary of Occupational Titles*, published by the Department of Labor;
   . . . .
   (e) *Use of vocational experts and other specialists.* If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

deviation"); but see Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1995) ("when expert testimony conflicts with the DOT, the DOT controls") (and cases cited therein); Tom v. Heckler, 779 F.2d 1250, 1257 n.12 (7th Cir. 1985) (discrepancies should be resolved in favor of the DOT, particularly when the ALJ "simply appears to have made a mistake" by relying on the VE testimony over an inconsistent description in the DOT).

The instant case presents one of those perhaps rare situations when the ALJ could properly credit the vocational expert's professional knowledge in lieu of the DOT. The VE testified that the job of auto dispatcher is an unskilled sedentary position that claimant could perform. Tr. 127. This testimony directly followed his testimony that claimant had previously performed skilled work, including work as an automobile body repairman and a construction foreman. Tr. 125-26. At this point, plaintiff's only contention is that the dispatcher job is unsuitable because he is not capable of undergoing the six months of training it requires. Such assertion is undermined by plaintiff's prior work history. Therefore, the record, although not ideal, supports the VE's conclusion that plaintiff is capable of performing the dispatcher job; at a minimum, there is persuasive evidence to support the

VE's departure from the DOT.  Accordingly, contrary to plaintiff's argument here, the Secretary's decision was supported by substantial evidence.

<u>Conclusion</u>

For the reasons set forth herein, the court denies plaintiff's Motion for Order Reversing the Decision of the Secretary (document 9) and grants defendant's Motion for Order Affirming the Decision of the Secretary (document 11).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 7, 1996

cc:  Raymond J. Kelly, Esq.
     David Broderick, Esq.

25